We'll hear argument this morning, case 1967, United States v. Sineneng-Smith. Mr. Fagan. Thank you, Mr. Chief Justice, and may it please the Court. Respondent acknowledges that in the context of a criminal law, the terms encourage and induce can refer solely to acts that facilitate or solicit unlawful activity. That's the meaning that they have in the context of this criminal law. There's no reason to reach out and give them a vastly more expansive interpretation simply to strike the statute down. Prohibitions on facilitating or soliciting unlawful activity have existed since before the founding and are perfectly constitutional. Interpreting this law to be unconstitutionally overbroad would deviate from that tradition and directly contradict the canon of constitutional avoidance. Historical understanding and practice confirm that Congress didn't use these familiar criminal law terms to enact a novel and broad ban on speech. Predecessors to this statute have been on the books since the late 19th century, and this provision has existed in substantially its current form for decades. Yet Respondent and her amici have identified no actual instances in which the statute has been applied to protected First Amendment activity or any concrete documented instances of chilling speech. The absence of such evidence isn't just happenstance, and it doesn't just reflect longstanding executive self-restraint. It's because this statute isn't aimed at speech, and it certainly doesn't encompass substantial amounts of it. To the extent that it could be applied to protected speech, that can be handled through the normal mechanism of as-applied First Amendment challenges in those cases. This isn't such a case because Respondent's own activity of fraudulently inducing aliens to pay her for a false path to lawful permanent residence isn't protected by the First Amendment. And she is not entitled to the last resort remedy of overbreadth invalidation that the Ninth Circuit, on its own initiative, reached out to impose. That's particularly so because she was convicted of an offense that required the jury to find beyond a reasonable doubt that she acted for the purpose of financial gain. You would acknowledge, though, that there are situations in which this would be unconstitutional as applied? Your Honor, I suppose there might be some circumstances where this could be unconstitutional as applied. I don't know that anyone's identified any actual such applications that the statute would reach under our reading. You know, a grandmother whose granddaughter is in the United States illegally tells a granddaughter, you know, I hope you will stay because, you know, I will miss you, things will not get better if you go back, so I encourage you to stay. That would be illegal under the statute, right? It would not be illegal under the statute, Your Honor, and here's why. First of all, the issue of when verbal acts or other acts cross the line into criminal complicity or solicitation is not an issue unique to this statute. It's one that the criminal law has dealt with for centuries, and something that abstract and attenuated is not going to be criminal complicity. In particular, this statute, we think, covers a more narrow subset of criminal complicity, which is the potential participation in some unlawful venture or trying to gin up some unlawful venture with the goal that that unlawful venture actually occur. And the ---- Ginsburg There was a decision that Circa Judge Shishima cited, I think it was a district court in Massachusetts, in which he said that that was an instance where the statute was applied to encroach on First Amendment rights. So, Your Honor, I don't think Judge Shishima thought that that particular prosecution, which was not subject to a First Amendment challenge itself, was in violation of the First Amendment. I think what worried Judge Shishima was a colloquy that occurred during that case in which a discussion was had about a hypothetical case in which, for example, the statute could, in theory, be applied to the actions of a lawyer. Now, again, the actions of a lawyer and when those cross the line into criminal complicity or solicitation is also not a problem that is unique to this statute, but is an issue that the criminal law has dealt with for quite a long time. And, in fact, I'm sorry. Kennedy What about a charity? So a charity provides food to someone who's in the country unlawfully. So, first of all, Your Honor, I think that would be conduct rather than speech, so I don't think it would factor into the over-breadth analysis. Is it covered under this statute? So if a charity were to give out food to people that the charity knew or recklessly disregarded were in the country unlawfully, on the same terms that it gives out food to other needy people, then no, Your Honor. Furthermore, I think in interpreting the statute, it's important to remember that it's part of the immigration and nationality... What if it's not on the same terms? It's designed to provide food for people who can't get it elsewhere and they know that the people taking advantage of that are here unlawfully. So, Your Honor, there is no explicit exception in the statute for activities that are denominated as charitable. So to the extent that a charity were doing something that violated the plain terms of the statute that amounted to giving, effectively giving money to people to, or something that is the equivalent of money to people with the purpose that those people reside in the United States unlawfully, that might violate the statute. But I think another important limiting feature of the statute is to recall that it is part of the Immigration and Nationality Act. And that statute has to be interpreted as a whole and not to be at war with itself. And in AUSC 1621, the Immigration and Nationality Act expressly contemplates that there are going to be circumstances in which public and private benefits may be given to people who are in the United States unlawfully. The statute has never been used, to my knowledge, and Respondent and her amici have not come up with an instance where it's been used to prosecute conduct of the type that you're hypothesizing, Justice Kavanaugh. Mr. Fagan, but it has been used according to the Amnesty International brief. And DHS admitted that there was a watch list at the border in which these charitable organizations, people who were giving legal advice at the border, all sorts of individuals were being watched because they potentially violated this encouragement provision, an inducement provision. So you're saying there's been no absolute, there's been no prosecution except for Ms. Henderson, which was a woman who hired a housekeeper who told her the absolute truth. If you go back, you're not, if you go, if you return to your country, you may not get back. Absolutely true statement, and she was prosecuted for that true statement as an encouragement and inducement for the housekeeper to stay here. But if you say this has no chilling effect, is that accurate? Well, Your Honor, let me take those two examples in turn. First of all, the Amnesty International letter, if you look at it, the DHS conduct in that case was focused on investigating instances of violence against border patrol agents and suspicions that people were being counseled to lie to immigration officials. I don't think either of those things is protected by the First Amendment. As to the Henderson case, I think there are more facts and context in that case. That was the prosecution, and I will acknowledge that that case is very close to the line of what we think the statute could permit us to cover. Could I ask one question? If this lawyer had sincerely believed, because in fact it was true or close to the truth, if she just got it wrong, that there was a lawful program that these individuals could have access to keep them here, would you have been able to prosecute her? No, Your Honor. We couldn't have. And I think that goes back to what I was saying to Justice Sotomayor. May I just interrupt you one second? Sure. You did prosecute her for fraud, for fraudulently telling her clients that they were eligible for this, correct? Your Honor, to be clear, the defendant in Henderson was not a lawyer and not someone who counseled clients. I'm not talking about her. I'm talking about this case. We prosecuted, oh, I'm sorry, in this particular case? Yes. She was not acting as a lawyer, although she is a lawyer. We prosecuted her for lying to her clients and the jury found that she knew that she was lying to her clients. She lied to her clients that by applying for a particular government program, she was putting them on a path to lawful permanent residence. She charged each of her clients about $6,000 for that. She kept sending them letters to tell them that So please tell me what the different penalty is for those fraud convictions as opposed to a conviction under this statute? Do you mean a conviction under the mail fraud statute, Your Honor? Under the mail fraud statute versus a conviction under this immigration statute. Is there a difference in the penalties? So the mail fraud statute, I believe, has a statutory range of 0 to 20 years of imprisonment and under this statute it was 0 to 10, I believe, because of the financial gain element. I would emphasize that the fact that this particular conduct may be covered by two different provisions is, first of all, happenstance. She could have easily given the clients the same advice verbally and then it wouldn't be covered by mail fraud. But let's go back to my original question, which let's say this program was a path, but they were still here unlawfully. Can you read the words of the statute to me that tell me that she wouldn't be prosecuted for encouraging or inducing them to stay while they went for the lawful path? So, Your Honor, we don't think it is encouragement or inducement, knowing or in reckless disregard of the alien's unlawful status, to either advise someone of the existence of or help someone to apply for a lawful government program. And let me explain why. First of all, an issue like this came up in the United States against Williams in which it was, the argument was put forth to the court that a statute that criminalized quote, presenting child pornography might in theory be applied to handing child pornography over to the police. And the court was skeptical of such a novel and quote, self-defeating interpretation of the statute. I think that reflects a broader principle that a statute like this should not lightly be interpreted to apply to conduct that simply participates in a government program. That's particularly true because the statute is part of the Immigration and Nationality Act. The Immigration and Nationality Act, sorry, just prior. You've said that point, which is a good point. I want to be sure you get an answer to this question, though, slightly. You've read the briefs, obviously, and they have a long, long list of horribles of which this is just a few, you know, that you've heard this morning. But Professor Bollig's brief gets rid of most of these horribles in a simple way. He lists the conditions under which the court traditionally has said a solicitation of a crime statute is constitutional. But the first condition and most important is that what you are soliciting is a crime. And it's easy to read this. When they use the word law, you may read it violation of criminal law. Okay? And that would get rid of most of them, and I think maybe all of them, I don't know. But I know that sometimes an alien who enters the United States is committing a crime. All right? But I can't think of any instance in which residing in the United States is a crime. But if you could think of one, and you might not like this, but I mean, I could see saying, well, this is restricted to the prosecution of that one. But if there's zero, I don't see how we narrow it to solicitation. Do you follow that? Well, Your Honor, it is a crime to be found in the United States following removal, for example. So someone who's residing in the United States after having previously been removed who's not entitled to be here would be violating the statute. Okay. So suppose, what do you think of that? Are you willing to accept that or not? Well, what we do is we take Professor Volokh's brief and we say that the statute under constitutional pressure is limited to instances with all the qualifications you've given. There are several there. But the main one is it is limited to solicitation of a crime. So it is only in the instance that there is a repeat and the person has to know it and the person who's doing it, a repeat of coming several times or twice to the United States and then what you just said and entering several times, you know, and we put that into it. And does that, does the government accept that? Well, Your Honor, we would certainly. It would be an alternative in my mind, possibly, that all the horribles apply and forget the statute. Well, Your Honor, we would certainly prefer that to the alternative of the Ninth Circuit's kind of novel over breadth invalidation. But I don't think that's, I don't think that remedy is necessary. And let me make two points. One about your parade of horribles and then another one about First Amendment law. As to the parade of horribles, I think what's actually ginned up the parade of horribles here is the Ninth Circuit's novel interpretation of the statute. No one had interpreted it that way before. And if you look at the amicus briefs, the activities that they are complaining about being chilled are ones in which they openly, publicly, historically and currently continue to engage. As a matter of First Amendment law, on the other hand, I don't think there's any reason to restrict this to criminal activity. If you look at the underlying law review article that Professor Volokh cites in his brief, he makes quite clear, I think this is on the first page of his article, that this Court's description of the unprotected category of statute, sorry, the unprotected speech category of speech that is intended to induce and commence illegal activity, which is how Williams describes it, applies to activity that's either civilly or criminally illegal. Breyer. He doesn't say that. He really, we couldn't even find a case where, of course, that makes a huge difference. We can't find a case where solicitation of X is held to be lawful rather than unconstitutional, where X is not a crime. Well, let me give you a few examples, Your Honor. So this Court has recently used the example of a business that has out in front of it a white applicants only sign, which is facilitating or soliciting the violation of a civil prohibition against racial discrimination in hiring. There are also the cases cited in our briefs, the Gazan case and the Pittsburgh press case, both of which uphold civil. Okay. If you take that approach, I see the approach, then all the questions that have asked become relevant. And, indeed, it is the landlady who says to the person, you always have a place here, knowing that that person is illegally in the United States. Or, you know, we can list universities, church groups, I mean, you name it, sanctuary cities, where they're trying to perhaps whatever they're trying to do. But it wouldn't be tough for it. Turn it over to the prosecutors, and they can use it as threats. You turn it, I mean, all these things that are in the briefs as horribles. Okay. Your interpretation would introduce them in reality, because you've had to make a lot of distinctions. And if I write all these distinctions into an opinion, I won't be certain I haven't left out some. Well, Your Honor, I think there's a reason that we haven't seen that in the many decades, indeed, about 150 years, that a statute like this has been on the books. And a reason why they can't document any instances of it, and a reason why they're amici are all advocacy groups that engage daily in the very activities they claim are chilled. What exactly do you think encourage means? Are there – is it your position that speech alone can never constitute a violation of this statute, that there always has to be conduct in addition to the speech? No, Your Honor. There are under – we think encourage has a meaning that's drawn from traditional criminal complicity law. Encourage is a very common word that is used in criminal complicity statute. And what does it mean? Specifically, what does it mean in this statute? So, in this statute, we think it's not entirely clear whether encourage is the one that covers solicitation or it's the one that covers complicity. So, I would actually, if I could, prefer to take the two – Take them together, fine. What does it mean? We think that it means that you have to substantially participate in the activity as something that the defendant wishes to bring about or to succeed. Well, that's aiding and abetting. It's different from aiding and abetting in, I think, three distinct ways. As the current Lefebvre treatise that's cited in our brief makes clear, this is on page 457, the specific words that a criminal complicity statute uses can have some effect on how it's interpreted, the particular subset of conduct that it covers. And I think here, Congress's focus on the words encourage and induce mean three things. First of all, it has to be something that the defendant actually wants to bring about or wants to succeed. I don't think you can be indifferent about encouraging or inducing. Second, it has to be something that the alien is aware of. Under normal aiding and abetting law, you could aid and abet – if it uses the words aid and abet, you can aid and abet without the principal knowing about it. If a murderer is about to go shoot somebody and I unload the victim's gun before the murderer gets there and the murderer never knows I did it, I'm still an aider and an abetter. And then the third thing is we think it requires some substantial amount of participation. And the reason for that is that you can't really encourage – we've been very consistent about this in the proceedings below, too, that you can't really encourage or induce someone in a de minimis way. It has to be something that really does make the activity more likely to succeed or more likely to occur. So if the defendant just says, well, I encourage you to stay here, that might not be enough. But if the defendant says it ten times in a forceful voice, that would be a violation? I don't think that kind of more abstract, attenuated exhortation is really going to satisfy this particular statute. One additional reason why – one additional reason why we think some substantial participation is required is because this is coming in Clause 4 of a five-clause statute. And if you look at Clauses 1 through 3, which cover the other kinds of substantive conduct here, all of them require some sort of substantial participation. What do you mean by substantial participation? Because I didn't really take that from your brief, so I'm a little bit confused as to where that's coming from. And again, what Justice Alito said, I mean, if somebody says, I really think you should stay here, here are the ten reasons why, and repeats that and repeats that, and it's very definitely encouraging and inducing a person to stay in this country, does that count as substantial participation? Or is there some non-speech conduct that has to be added to the mix? Well, Your Honor, I think there are occasions in the criminal law where words can constitute aiding and abetting, and I think that the same is true under this statute. If the Court were to have a problem with that, it could either be addressed through as-applied challenges, as the Chief Justice has mentioned, or, again, we would refer to the Ninth Circuit's remedy something that says that it has to be accompanied, an interpretation that says that it has to be accompanied by some conduct. Mr. Fagan, I just want to give you a shot before your time's up, and I take your point there, such as it is. But two things. Normally in the criminal law, when we, in secondary liability, to avoid the First Amendment, we, as Justice Breyer suggested, don't allow punishment for the underlying conduct itself. That would seem to be a basic First Amendment value. So what do we do about the fact that most applications, maybe not all, but most applications here of the underlying conduct would be civilly punished? And here you wish to criminally punish the speech, number one. And number two, normally we require the aider and abetter or secondary liable person to have a purpose shared with the defendant, the same purpose. And here the government, as I understand it, argued that there's no mens rea required to prove this violation or a very minimal one. Well, Your Honor, below we resisted a mens rea of willfully, which would require some specific purpose. Yeah, purpose. No, some specific, having specifically in mind a specific purpose to violate the laws. Purpose. We do think this requires the same mens rea that this Court described in a crime with knowledge of the attendant circumstances, although this would extend to reckless disregard of the attendant circumstances, would satisfy the normal criminal complicity. And that's what I guess I'm getting at, is that if recklessness is good enough, so I could be in my speech, and this gets even beyond the specific versus how the conduct and how specific the exhortation has to be, but I could be reckless in my speech in encouraging somebody and wind up a Federal criminal, even though the underlying violation is merely civil. Is that the gist of the government's position here? No, Your Honor. The reckless disregard has to be in relation to the alien status about the law. I'm recklessly indifferent to my granddaughter's status, and I'm recklessly encouraging, exhorting her in whatever level of specificity you  If she has no intention of violating the immigration laws, and the underlying conduct for which she can be punished is merely civil, then what? So, Your Honor, two parts of that. First of all, we don't think there's such a thing as reckless encouragement or inducement. As I was explaining in my colloquy with Justice Alito, we think the words encouragement and inducement in themselves carry a meaning that you have to the unlawful venture to occur or to succeed. I guess what I'm wondering here, Mr. Fagan, at the end of it all, and just to cut to the chase, is does the government think that the common law principles of secondary liability that normally try and prevent the dragnet effect of secondary liability from extending too far inform the First Amendment analysis here, or would you just have us blow past all of those guideposts? Well, Your Honor, we do think the statute should be interpreted in conformity with the normal criminal law principles of accomplice liability and solicitation that the Court has long recognized. Do you agree with Professor Volokh, or do you not? Your Honor, I do not agree, or we do not agree, with Professor Volokh's suggestion in his brief that this needs to be limited to criminal activity. Again, if you look at the article that he cites in his brief, it has some of the same examples that I was just using in court. I don't know where Professor Volokh got this idea, but there are situations in which a person, in which the commission of the offense that is encouraged is not made criminal because of the vulnerable position of the person who is engaging in that act, but it doesn't necessarily follow that encouraging that person to do the thing cannot be made criminal. I think that's exactly right. If I could just quickly answer and then reserve the balance. Very briefly. For example, you could decide to make prostitution a civil offense and still criminally punish recruiting prostitutes. Thank you. Thank you, counsel. Mr. Fleming. Mr. Chief Justice, and may it please the Court, I'd begin with two points. First, Congress means what it says. This provision doesn't mention solicitation. It doesn't mention aiding and abetting. Congress knows how to use those words when it wants to. The words it did use are much broader. Encourage or induce, used together, cover every form of influence and persuasion, as this Court said in the electrical workers case. In this statute, falsity is not an element, nor is truth a defense. Even accurate advice encouraging someone to stay is banned. And as a result, this law makes a felon of a teacher who says to an undocumented student that she should stay and pursue her education. It makes a felon of a pastor who says to undocumented worshipers that they can stay and freely exercise their religion. It makes a felon of a doctor who encourages an undocumented patient to stay here for medical treatment. And as the government has still never denied, it makes a felon of a lawyer who advises an undocumented client that her best route to lawful status is to remain physically present in the United States. So if the statute is read as written, which we think it should be, it is substantially overbroad. The second point, however, and I think this was pointed up effectively in Justice Gorsuch's question, is that even were this Court to rewrite this law as a solicitation provision, and we don't think it can, it would still be overbroad. And that is because there is no historical tradition going back to 1791 or since supporting a categorical exclusion from the First Amendment for solicitation of non-criminal conduct. All of the government's common law examples, going back to Sir Edward Cook and Sir George Gershwin, all of them have a historical tradition of solicitation of crime per Justice Breyer's question. Professor Volokh explains this, and he explains why that's the case, because solicitation offenses fall within the traditional exception of speech integral to a crime. There is no dispute, however, that nothing my client did encouraged or even solicited anyone to commit a crime. So, Justice Breyer, were the Court to read the statute in the way that Your Honor suggested, although I don't think that's a fair reading of what Congress did, but if the Court were to rewrite it that way, the judgment of acquittal would still have to be affirmed because there is no suggestion that any of my clients, the people that she encouraged, were ever encouraged to commit a crime or did commit a crime. Well, on this point. Was there anything in this statute? This is little i, v. In the earlier parts of the statute, 1, 2, and 3, is there anything that she could have been convicted of when she was taking people's money and doing nothing for them? So, to answer the question, Justice Ginsburg, and then I'll address the premise, but to answer the question, no. Provisions 1, 2, and 3 of 1324a1a do not prohibit my client's conduct. However, the falsity aspect built into your question was the basis of the government's mail fraud prosecution, and one thing I'd like to correct in what Mr. Fagan said is, a mail fraud prosecution doesn't require that a mailing be fraudulent. It just requires a fraudulent scheme where there is a use of the mail that is incident to the scheme. And that's how this case was charged. She wasn't accused of putting something in the mail that was fraudulent. The misrepresentations that were accused were oral misrepresentations. So whether the fraud is supposedly written or oral, as long as there is a mailing, which in connection with immigration there will almost always be, because applications are filed with the government either by mail or there will be a use of the wires if someone uses a telephone or the internet, any actual fraudulent scheme can be readily prosecuted and is readily prosecuted by the federal government. There was one count. There were five counts. Two were knocked out by the Ninth Circuit judgment. So there are three remaining counts. Two were mail fraud. What was the other one? So there were three people who were three noncitizens who were offered as potential victims. One did not testify at trial. And so as to that one person, both the mail fraud and the immigration encouragement count were thrown out. She was convicted of two counts of mail fraud and two counts of encouragement for the other two. There were also two tax-related counts to which she pled. On Professor Volokh's point, it's an interesting point, but let me give you this example and get your reaction to it. There's a teenager who has been very seriously bullied and is very depressed and is thinking of committing suicide. The teenager has a gun in his hand. He calls up the one person he thinks is his friend and he says, I'm thinking of killing myself. And the person on the other end of the line says, you've said this before. I'm tired of hearing this from you. You never follow through. You're a coward. Why don't you just do it? I encourage you to pull the trigger. Now, is that protected by the First Amendment? Is that speech protected by the First Amendment? Attempting to commit suicide is not a crime. So I don't think that would be protected, Justice Alito. Why would that be? So doesn't that defeat the argument that you can never, someone can never be convicted of speech that encourages an activity that is not criminal? No. I think incitement to suicide would fall within the Brandenburg exception. You're talking about inciting imminent harm and imminent lawlessness. Also, let's remember, at common law, suicide was a crime. And so the framers may well have considered that speech soliciting or aiding and abetting suicide was, in fact, not something that was being protected by the First Amendment. Well, it's not a crime today. No, not today. Why does this not qualify under Brandenburg? Why does it not qualify? Why would encouraging someone to remain in the country illegally not qualify under Brandenburg? First of all, I don't think that's an argument the government is making. And I think for good reason. Brandenburg generally applies, only allows regulation of incitement to immediate lawless activity and arguably violent lawless activity. Well, okay. Which this is not going to cause harm. If it's limited to violent activity, that would be a limitation. But certainly the unlawfulness here is imminent. In fact, the unlawfulness exists prior to the speech and exists a nanosecond after the speech ended. So it is imminent. And I think that's another distinction from the suicide case that I was going to get to, is most state laws that prohibit the solicitation of suicide have a causation requirement. So there has to actually be some connection between the speech and what's going to happen. Here, if you have someone who's already here, this statute has no causation requirement. It also has no mens rea requirement. I was astonished that Mr. Fagan stood up and said that they're willing to import one now, that there have to be some requirement that the defendant share the goal of this actually happening, because that's not how this jury was instructed. Isn't it odd to think of somebody encouraging somebody to do something if the person who's doing the encouraging does not intend for the person to do that thing? Isn't that built into the concept of encouragement? If it were, Justice Alito, then the jury should have been accordingly instructed, but the government consistently rejected any kind of mens rea instruction in this case, other than the one expressly called out in the statute, which is that the defendant know or recklessly disregard the immigration status of the individual. But on page 50 of the statute, there's no reason for reversing the conviction for improper instructions to the jury, but I don't know that it's a ground for holding that the statute is unconstitutional. Well, I would say at the very least, if the Court were to rewrite the statute either in the way the government put forward in its brief or in the way that Mr. Fagan is now suggesting for the first time now, there would at the very least need to be a remand for a new trial under the new statute by the government. Before you leave this, I don't know if this can be done. Honestly, don't. But, I mean, in thinking of the Volokh brief and the rewriting, all you one thing you'd do is, it says violation of law, you'd say violation of criminal law. You'd have to do that. You would. And you imply criminal law in order to avoid the constitutional thing. Then you have the other restrictions, such as Mr. Fagan gave and such as Volokh Gibbs and so forth, and say the reason we rewrite it this way, because it may be that sometimes Justice Alito's examples are right, it may well be. I don't know all the possibilities there. But the reason we write it this way is we assume that what Congress would have preferred to the unconstitutionality of the statute is the common definition, the common definition and use of the word solicitation. In other words, we take the heart of solicitation, read that into Congress's mind, and put in the word criminal. Now, I mean, you bring out a thought of this, and I don't know, but I am curious to know what your reaction to it is. So my reaction, Justice Breyer, is first of all, if Your Honor were to do that, my client gets acquitted. Judgment affirmed. I want to be very clear about that. As a matter of statutory interpretation, I'm not sure that that's, I think that's a bridge too far. It would be permissible if Congress had written solicit. But it didn't. It wrote encourage or induce. And Congress knows how to say solicit when it wants to. It says it in 18 U.S.C. 373. And as this Court said in Clark v. Martinez, constitutional avoidance only kicks in after all the ordinary textual analysis of the statute as a whole has been exhausted. And in this circumstance, I think every textual indicator whatsoever shows that Congress meant to do what it said, which was to ban encouragement, which is speech. It isn't a narrow solicitation provision. It isn't an aiding and abetting provision. We know that not just because that's what the words say, but because Congress wrote an aiding and abetting provision just two subparagraphs later, using those words specifically. We know that the aiding and abetting provision, that one two subparagraphs down, applies to subsection 4, which would mean if rewritten to mean solicitation, you could be convicted of aiding and abetting solicitation or aiding and abetting aiding and abetting, which is at the very least counterintuitive, if not absurd. And we also know that if you limit it to a conduct-based provision, it is now completely redundant of the three provisions that come immediately before. The government has not pointed to any actual conduct that it would be able to prosecute under a narrowed encouragement provision, that it can't already prosecute under other provisions. Similarly, it has not explained what work this encouragement provision would do if narrowed that way, because every example it has of actual wrongdoing that it would want to be able to punish, it can punish under sections 1 through 3 or under the document that it would want to be able to prosecute. If the statute, just to be clear, if the statute said aid, abet, or solicit, that would be constitutional? It would not, Justice Kavanaugh, because of the civil criminal issue we've been discussing. It would say aid, abet, or solicit conduct that in itself is not criminal. Let's make no mistake about what the government... If we didn't agree with you on that point, and it said aid, abet, or solicit, would it then be constitutional? I still don't think it would be, because... Why not? Well, because you are talking about a statute that singles out one particular category of civil violations for criminal solicitation liability. Why this one in particular and not any other civil violations, many of which could be or are subject to solicitation or encouragement without any criminal consequence? Many actual Federal crimes. There's no general Federal solicitation statute. There's only 373, which deals with crimes of violence. Mr. Fleming, I go back to an example that was given earlier by Justice Breyer. But there is a statute which has to do with employers hiring illegal aliens. And there is no statute that makes it illegal for the employee to, for an alien to be employed. So what do you do with that example? There's a statute that makes it illegal not to use the Federal whatever system, verification system. But there's no actual law that makes it illegal for an alien to work in the United States. So they can't, you know, they have to provide a Social Security card and all of this other stuff. And those acts are going to make them criminally liable. But certainly not the act of being employed. I think those fall under the also recognized prohibition on offers to engage in transactions that are themselves banned, right? I mean, hiring someone is not protected speech. So Congress can obviously ban hiring someone who is not lawfully authorized. Is that your answer to the prostitution case? I mean, in some ways, yes. I mean, I think because you can decriminalize prostitution, but you can still criminalize paying someone to engage in sex. That's not speech. There are a lot of examples of instances where states have made things illegal, makes it illegal to encourage somebody to do something that is not itself illegal, involving minors. Encouraging a minor to purchase alcohol or to consume alcohol. Or encourage a person of diminished capacity to engage in some kind of dangerous activity. I mean, you're going to do a lot of damage if you accept this distinction that you can never criminalize encouraging a vulnerable person to do something that is not itself illegal on the part of the criminal, on the part of the person who's encouraged. So I don't know of any statute that sweeps as broadly as this one. The liquor laws that the government cites actually are not framed in terms of aiding and abetting the minor's conduct. There's a separate prohibition on furnishing alcohol to a minor. That is an act. That is conduct. That is not speech. Of course a state can make that illegal. It can also make illegal aiding and abetting the furnishing of the conduct, of the alcohol. So a 23-year-old buys alcohol for a minor. The liquor store attendant who sells the alcohol, knowing that it's going to the minor, is aiding and abetting that conduct. But no one, no statute that I know of, is framed in terms of aiding and abetting the non-criminal conduct of the minor. Let me ask you one more question about something that seems unusual about your overbreath argument. Usually in a free speech overbreath case, the defendant has engaged in speech. And the defendant says, even if my speech is not protected, I can assert free speech claims of other people. But here, your client was not prosecuted for engaging in speech. She was prosecuted for encouragement through conduct. So you have somebody who didn't engage in speech at all making free speech claims that could be asserted by other people. Overbreath is a strong doctrine, but are there other cases where this has happened? And if not, why should we extend it into this new area? I think the best example is Coates v. Cincinnati. That was an overbreath challenge. That was the one where the ordinance prohibited being on the streets of Cincinnati engaging in an annoying conduct. And it was not clear what Mr. Coates had actually done. The record before the Court didn't even show what it was. And this Court recognized that the ordinance could have prohibited all manner of prohibitable conduct, like blocking traffic or littering the streets, but it nonetheless found the ordinance to be unconstitutionally overbroad because it was directed to a substantial amount of protected speech. And this is the same case. We do not need to show that the conduct that Ms. Semening Smith engaged in was protected speech if the statute, as it plainly does, sweeps within its ambit a substantial amount of protected speech when compared to the legitimate sweep of the statute. Kagan. Kagan. Kagan. Kagan. What do we do about the fact that there haven't been prosecutions brought of the kind that you talk about? I mean, there's obviously no requirement that that be the case, but there is a view that there has to be a realistic risk of a statute that's overbroad being applied to protected activity. So where does the realistic risk come from in the absence of actual prosecutions that you can point to and say, ah, that went wrong? I'd like to point to the Henderson case, and I'd like to clarify a statement that Mr. Fagan made about it. One of this is the case in Boston where Ms. Henderson was prosecuted, and one of the theories, an independent theory of liability, was that she gave advice to her undocumented housekeeper. If you stay here, they won't let you back. And the district court's opinion on page 200 makes very clear that is an alternative theory of criminal liability. It's not just hiring the person. It was also the advice that was given. And that's why the district judge engaged in the colloquy with the hypothetical about the lawyer, is because it was a prosecution of advice. Okay. I'll take the point, but broaden it out a little bit in terms of your answers. You just said, okay, there's not zero, there's one. There's at least one that we know of. Okay. Yes, that's right. And in terms of the others, I mean, I think Your Honor said this, but I'll reinforce it to the extent I might, which is, I don't think this Court has ever required a certain number of actual prosecutions. The overbreadth doctrine there is the overbreadth doctrine is triggered by the substantial sweep of the statute carrying within its ambit a ban on protected speech. The fact that the government is careful enough usually not to charge it in those cases does not take away the fact that it risks chilling the speech substantially. Now, Mr. Fagan makes the point in his brief, and again this morning, that, well, lots of people are actually making this speech already within the ban. That's not relevant either. When this Court decided the Stevens case, it pointed to hundreds of hunting websites and hunting magazines that contained depictions of animal cruelty that fell within the ban. That was not a weakness of the challenge. That was a strength of the challenge, because it showed that the speech was not fanciful or hypothetical, but actually was happening. I point out, this statute historically was not used very much, but the government has recently made it a focus of enforcement. The religious organization Zemeckis makes this point on page 30. And it's also something that, as Justice Sotomayor's question pointed up, they are using as the basis for investigation of U.S. citizens for their prayer, for their speech, and for their legal advice. And so even though in the past there may not have been that many uses of this statute, one can expect that if this Court upholds the statute, it will continue to be threatened and used, and whether it's ultimately used does not matter, because the First Amendment does not require us to rely on the grace of the executive branch. It protects us from these situations. Go back for one second, because I'm taking in your answer to what I asked before. But imagine this. One, says the opinion, the government wants this to be interpreted as a solicitation statute. So be it. We insert the word now. Two, solicitation has some rules around it. One is what Justice Gorsuch said. You don't punish as a criminal that which isn't. But there might be exceptions to that. General rule. General rule, with possible exceptions. Two, it has to be imminent. That's Brandenburg. Three, it has to be very specific. And there could be some others. Now, it does require us to add one sentence. We interpret it as Congress picking up, in the government's view, solicitation, the common definition of solicitation, not including the exceptions, et cetera, because this is a common kind of thing. You see, something like that. That's it. That's the question, because that's what's floating around in my mind. I think, Your Honor, if you write that opinion, you'd have to add one more sentence, which is the judgment below is affirmed. But if you add that sentence, we would be fine with it, with one exception, or one question, which is the notion that there might be exceptions to the rule that solicitation has to be limited to a solicitation of criminal conduct with specific intent on the part of the defendant that the criminal conduct be committed. If that was not. Would we have to get that passed by the Senate and House and then signed by the President before we could put that many changes to the statute? Absolutely, Mr. Chief Justice. And the fact that you would need to do that in order for it to be constitutional is a good indication that Congress did not mean for the statute to be read that way, which is why we think the easier opinion to write is an opinion that says, we look at the text, we look at the context, and there's nothing in this subsection 4 that suggests that Congress meant the kind of limited statute that Justice Breyer is referring to. But would you talk a little bit about that generally? Because, you know, we obviously like to save statutes rather than to kill statutes. So what can we do, consistent with our own role and consistent with our understanding that Congress's role is different, but when is it possible for us to narrow statutes without being subject to the critique that we're rewriting them? And is it possible in this case? I don't think it's possible in this case, because all of the textual indicators point in the direction of the interpretation that I've been advocating and that the Court below took. I think as a general matter, this Court interprets statutes. It doesn't rewrite them. And if there is an interpretation of the statute as a whole, I don't just mean a single word. I mean, it's certainly encouraged can mean lots of different things, but it is very broad and capacious. And unless there is a suggestion that Congress meant to adopt a narrower interpretation here, there is no textual indication of that. I don't think that's permissible. Then we would never do a narrowing construction because you would always say, well, just go with what the words of the statute mean. No, I think there are times... When can you do, to pick up on Justice Kagan's point, when can you do a narrowing construction? You have a broad term, if read literally, would be broad. When can you narrow? I think, as this Court said in Clark v. Martinez, what the Court does is it applies all the standard rules of textual analysis of statutes, not just interpreting a statute, but looking at how it's used in context, looking at the common law background against which Congress legislates, looking at the overall structure of the statute, looking at legislative history sometimes. When all of that has been exhausted, if the Court still thinks that the statute is ambiguous and reasonably susceptible to two different meanings, then constitutional avoidance has some force, and you pick the one that is going to avoid the constitutional avoidance. Well, when you do all that, you usually have a best interpretation, so you don't get to the constitutional avoidance. That's the problem. I think the problem is, can you read the statute to be not the best interpretation but a second best so as to save the statute, as Justice Kagan says, and not opine too forcefully on the First Amendment limits when you don't have to to avoid some of Justice Alito's hypotheticals? Often one can do that. This is not a case in which I think you can, but I'm not here to suggest that constitutional avoidance never works. It does. But the first thing one has to do, and the Court has been clear about this, is read the statute and apply the standard tools. And I think when you do this here, there isn't much objection to this on the other side, that when you read the words, when you look at the fact that Congress uses aiding and abetting and soliciting in other provisions when it means to reference those doctrines, when you look at the fact that the statute under the government's reading would be completely duplicative and redundant of everything else that comes before and swallow it all up, like the Court said in Yates, that is not a plausible reading, and the government has given no persuasive account of what work this provision would be doing if read their way. When you're left with that, you're saying, what are we doing if we turn this encouraging and inducing statute into a solicitation statute, other than rewriting and putting in a statute that Congress could have passed if it wished? I'll point out, the second problem with constitutional avoidance is the discussion that we've been having this morning, which is, it doesn't actually avoid the you are simply creating a brand-new First Amendment exclusion by creating a statute that prohibits encouraging or soliciting non-criminal conduct, which is we've never seen a single statute like that before. The Constitution has appointed one. Go ahead. Well, Mr. Fleming, can I take you back to the question I asked before when you gave me the answer that Coates is a case that falls within the category that I mentioned? And you said we didn't know what Coates was doing. But actually, the opinion says Coates was a student involved in a demonstration and the other appellants were pickets involved in a labor dispute. That is expressive conduct, at the very least. So I ask you again. Do you have a case in which a person who did not engage in speech is able to make a free speech overbreadth argument? I mean, Coates may have been involved, but I'm not sure what would the Court view in that. I think there's a footnote in the opinion that says it's not clear exactly what he was doing. He was part of the group. So I think that's the best example. That said, one of the cornerstones of the overbreadth doctrine is that as long as you are charged under the provision, which my client clearly was, I mean, she herself, by the way, the indicted conduct was the sending of a retainer in which she agreed to file non-fraudulent applications with the government. There's no suggestion that anything she did was actually fraudulent in terms of what she was indicted for for these counts. The mail fraud counts had to do with oral statements made earlier. So there was, in fact, an as-applied free speech argument made. It wasn't decided by the Ninth Circuit. It's not covered by the question presented. But she did engage in speech. That's our position. But it doesn't matter for purposes of the question before the Court because this is an overbreadth challenge against the sweep of this statute far beyond any legitimate conduct that the government would need to prohibit because there are many other statutes that prohibit actual conduct-based wrongdoing. Unless, if I may, I'd just like to point out, this is a very unusual statute. If Congress wrote a statute that said it is a crime to aid, abet or solicit certain serious civil offenses, A, B, C, is that law on its face permissible? I would say not without some proof because if we take Stevens seriously, as I think we have to, there would have to be some kind of evidence that the framers, at the time that they wrote the First Amendment, expected that category of speech to be excluded from its ambit. If Congress then rewrote it to say it is a crime to aid, abet or solicit certain offenses and then lists and makes them crimes, you're okay with that, obviously. I mean, that raises a — that's a harder case. Thankfully, we don't have to deal with that here. That raises, I think, the difficult question, which Mr. Fagan, I think, very wisely stayed away from, which is it's hard to tell sometimes the line between protected speech and unprotected solicitation. Remember, in Williams, this Court said it's perfectly okay to say to someone, I encourage you to obtain child pornography. That's protected. So is it enough? I mean, solicitation of violent offenses, we know that that can be prohibited. Solicitation of minor offenses, I think that's a difficult question. This Court doesn't have a lot of solicitation cases on the books. Maybe one day Your Honors will have to decide it, but that is not today. So I would just like to be very clear. This is a statute that uses very broad words, that uses them in the context in which all they can do is ban free speech. The result is that vast amounts of truthful and accurate and heartfelt speech that's in no way related and much less integral any actual crime is subject to five years in Federal prison. I would submit that the First Amendment is wisely designed to protect us from just this kind of a law, and we would respectfully request that the judgment be affirmed. Roberts. Thank you, counsel. Four minutes, Mr. Fagan. Fagan. Thank you, Mr. Chief Justice. I take Respondent's principal submission today to be that you simply can't read these words to mean anything other than the incredibly broad reading that Respondent and the Ninth Circuit attribute to them. And that's why you can't do constitutional avoidance. But that's simply not true. As Respondent acknowledges on pages 20 to 21 of her brief, these words can, in the context of a criminal complicity provision, at least under the canon of noscitur asociis, have the meaning that we are attributing to them today. And if they can have that meaning in that context, they can have that meaning in this context. These are not unusual or strange words to use in this context to mean what we are saying that they mean. As we point out in our brief, they are commonly used in State statutes, the Model Penal Code, the Lefebvre Treatise. Even decisions of this Court have used them in that way. Used in that way, they fill a gap in this statute that includes conduct. For example, under Clause 1, the alien, someone needs to actually bring the alien into the United States. So even aiding and abetting, bringing into the United States, wouldn't cover certain kinds of help for aliens who come into the United States by themselves. Congress was using these words in their normal criminal law meaning because, let's not forget, this statute, as I was discussing earlier with Justice Breyer, covers the facilitation and solicitation of a lot of actual criminal conduct, coming to and entering the United States unlawfully. To the extent that it also covers certain civil violations, for reasons I've discussed, I think this Court has recognized in previous cases like Pittsburgh Press and Gazam and in the white applicants only example, that Congress or another legislature can civilly prescribe speech that facilitates activities that are civilly prohibited. And if that were really protected speech, Congress or another legislature couldn't even civilly prescribe it. The reason why it can be civilly prescribed is because it is unprotected speech. And if it's unprotected speech, then it can be subject to a criminal prohibition as well. This, to the extent that this statute may reach some protected speech, it can be handled as applied. There is no reason to read this statute as broadly as Respondent is contending that it needs to be read here and that the Ninth Circuit read it for the very first time in this case. Mr. Fagan, what in reading this statute would give an average person notice of all of the limitations you're suggesting to us? Because I read, encourage or induce an alien to come, enter or reside in the U.S., knowing or in reckless disregard of the fact that such coming to entry or residence is or will be in violation of law. It seems to me that all of the examples that were raised earlier, the hospital that's treating a child, an illegally present child, with a disease, the church who provides worship to illegal aliens, all of the other examples that were given on their face to the common reader of those words would be a violation of this statute. Well, Your Honor, I don't think that is the standard. I don't think that's the standard this Court applies, that someone is ignorant of what those words mean in the context of the criminal law. Again, these are not words that are unique to this statute. If you look at the Lefebvre Treatise, section 13.2, the word encouraging is used as the title of section headings to describe accomplice liability. This Court used the word induce in Williams. Induce liability has all sorts of meaning that you're not endorsing. You're saying this is not aiding and abetting. You're saying it's not solicitation. It's something else. No, Your Honor. Altogether. We are using the principles of complicity and solicitation in a statute that is directed at large amounts of criminal activity to inform what these words mean here. I suppose it is possible that someone who does not have any knowledge of how those words are used in the context of facilitation or solicitation statutes might look at it and might have the reaction that they should be given a different meaning, but I don't think that's the standard this Court should apply. Thank you. Thank you, Counsel. The case is submitted.